UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CHRISTENSON, et al.,

      Plaintiffs,

vs.

Case No. 15-14441
HON. GEORGE CARAM STEEH

CITY OF ROSEVILLE,
JAMES OSTERHOUT, and
TIMOTHY TOMLINSON,

      Defendants.
_____/

OPINON AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION (DOC. 21)

Pro se plaintiffs James Christenson and Christenson Law Trust assert a claim under 42 U.S.C. § 1983, alleging that defendants the City of Roseville, James Osterhout, and Timothy Tomlinson violated plaintiffs Fourth Amendment rights. Courts liberally construe pro se complaints and do not hold them to the same stringent standards as formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

This matter is presently before the Court on defendant's Rule 12(b) Motion to Dismiss and Rule 56 Motion for Summary Judgment. (Doc. 21). Plaintiffs have also filed a Motion for Preliminary Injunctive Relief, (Doc. 28), and a Motion for Summary Judgment, (Doc. 29). The Court dispenses

with oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated below, defendants' motion to dismiss for lack of subject matter is GRANTED, the remaining motions are moot, and plaintiffs' complaint is dismissed.

## I. Background

On July 17, 2014, the City of Roseville (the City) "red tagged" a house located at 27807 Garfield, Roseville, Michigan (the Property), signaling that the Property was not approved for occupancy. At that time, the Property was owned by Rech Realty. On November 13, 2014, Rech Realty permitted the City to inspect the Property. The inspection revealed multiple violations of the City of Roseville Building Code (Building Code). The City informed Rech Realty that "[a]ll violations must be corrected, reinspected and approved prior to the occupancy of this building." (Doc. 21-2 at 4).

On October 12, 2015, Osterhout sent a letter to Rech Realty noting the prior Building Code violations and requesting that it call to schedule a reinspection. But Rech Realty no longer owned the Property; it was sold to Brittany Westerlund and Merle Christenson on December 11, 2014. Westerlund, Merle Christenson, and plaintiff James Christenson subsequently wrote the City's mayor, explaining that they now owned the Property and did not believe that it should be subject to inspection.

Westerlund and Merle Christenson transferred their interest in the Property to the Christenson Law Firm Trust 27807 on October 20, 2015. Thereafter, the City sent Westerlund a "Notice of Violation or Non-Conformity," stating that she had 10 days to correct the violations. The City's attorney, Tomlinson, wrote Westerlund and the Christensons explaining that the Property was not approved for occupancy because of the Building Code violations. (Doc. 1 at 38). Tomlinson's letter also stated that although they "may not have had knowledge of the violations, it is still your responsibility as the new property owner to ensure that the violations are corrected." (*Id.*). "As a matter of law, each and every one of the violations in the section would constitute a criminal misdemeanor subject to 93 days in jail and/or up to a $500 fine." (*Id.*). Tomlinson asserted that the City sought entry to re-inspect the violations to determine whether they had been corrected, noting that if they had not, Westerlund and the Christensons may be held liable. (*Id.*). James Christenson responded, stating that he did not consent to an inspection.

On December 15, 2015, while inspecting a home adjacent to the Property, Osterhout observed that new electrical work had been completed, garbage placed outside the Property, and newly posted 'No Trespassing' signs. Osterhout did not enter onto the Property, but merely observed

these issues in plain view from the surrounding area.  Osterhout thereafter sent a "Violation Notice" to "Christenson Law Trust 27807," notifying Plaintiffs that electrical work was done without the proper permit, (Doc. 1 at 42), and a letter stating that the Property appeared to be unlawfully occupied and requesting that Plaintiffs schedule an inspection. (*Id.* at 41).

On December 21, 2015, Plaintiff James Christenson sent a letter to Glenn Sexton, the Director of the City's Building Department, insisting that the current Property owners did not consent to any inspection and that Osterhout had violated their Fourth Amendment rights. Plaintiffs filed this suit on December 23, 2015.

## II. Standard of Review

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that plaintiffs lack standing.  Defendants' also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and seek summary judgment under Fed. R. Civ. P. 56.  The Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).  It is the plaintiffs' burden to demonstrate that the court has subject matter jurisdiction. *RMI Titanium Co v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).  "A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the non-moving party." *Id.* (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (emphasis in original).  Defendants' challenge to plaintiffs' standing is a factual attack.  Thus, no presumptive truthfulness applies to the factual allegations in the complaint.  *Id.*

### III. Analysis

Defendants argue that this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because plaintiffs lack standing to assert their claims.  A plaintiff's lack of standing under Article III of the United States Constitution deprives a federal court of subject matter jurisdiction.  *Stalley v. Methodist Healthcare,* 517 F.3d 911, 916 (6th Cir. 2008).  "To satisfy the 'case' or

- 5 -

'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–472 (1982)).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations omitted). In pre-enforcement challenges, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The Court lacks subject matter jurisdiction because plaintiffs have not suffered an injury in fact. Defendants have not entered the Property to conduct a search or seizure subsequent to December 11, 2014, when

plaintiffs accrued an interest in the Property.  Thus, this case falls into the pre-enforcement context.  Plaintiffs claim that defendants intend to engage in conduct protected by their Fourth Amendment rights; prohibiting an unconsented, warrantless search of the Property.  But there is no credible threat of prosecution for refusing to consent to an inspection.

The City's right of entry is governed by Building Code § 225-21, which states that "[t]he Code Official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures.  If entry is refused or not obtained, the Code Official is authorized to pursue recourse as provided by law."  While failure to consent to entry may result in recourse, such recourse does not involve a credible threat of prosecution.  First, the language of § 225-21 does not state that those who refuse consent will be prosecuted.  Furthermore, prosecution for refusing consent is not a punishment provided by law.  *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 532-34 (1967)*.*

In *Camara*, a San Francisco building ordinance permitted warrantless, unconsented inspections to enforce the city's housing code.  The plaintiff refused to consent to an inspection, and was thereafter charged with violating the housing code.  The Supreme Court held that the

building ordinance was unconstitutional because such administrative searches constitute significant intrusions upon Fourth Amendment interests and, when conducted without a warrant, lack the traditional safeguards that are guaranteed by the Fourth Amendment.  *Id.*  Thus, citizens cannot reasonably be put to the choice of consenting to warrantless inspection or facing criminal charges.  *See id.* at 532.  *See also City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015).

Additionally, it is unreasonable to find that any other section of the Housing Code creates a credible threat of prosecution for refusing to consent to an inspection.  Refusing consent to an inspection cannot be found as a violation of the Housing Code.[1]  *See* Housing Code § 225-30.  But, even if it was a violation, *Camara* would preclude a criminal conviction.  Therefore, § 225-31, which calls for "a fine of not more than $500 or imprisonment for a term not to exceed 90 days, or both" upon conviction of

---

[1] § 225-30 states that "It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, remove, demolish, maintain, fail to maintain, provide, fail to provide, occupy, let to another or occupy or permit another person to occupy any premises, property, structure or equipment regulated by this code, or cause same to be done, contrary to or in conflict with or in violation of any of the provisions of this code, or to fail to obey a lawful order of the Code Official, or to remove or deface a placard or notice posted under the provisions of this code."  In summary, this provision prohibits impacting property covered by the code in a manner contrary to the provisions of this code.  It does not state, nor does it imply, that refusing to consent to an inspection is an unlawful act.

a Housing Code violation, is not applicable to refusing consent to an inspection.

### IV. Conclusion

Plaintiff lacks an injury in fact, and therefore, lacks standing to bring their claims. As a result, the Court does not have subject matter jurisdiction. As such, the remaining motions are moot. *See Moir*, 895 F.2d at 272.

For the reasons stated above,

IT IS ORDERED that defendants' 12(b) Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' complaint is DISMISSED.

Dated: January 24, 2017

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 24, 2017, by electronic and/or ordinary mail and also on James Christenson, 22014 Fresard, Saint Clair Shores, MI 48080.

s/Marcia Beauchemin
Deputy Clerk